**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| BYRON J. LEE | : |
| | : |
| | : |
| | : |
| v. | : |
| | :  Civil Action No. CCB-09-997 |
| MICHAEL J. ASTRUE, | : |
| Commissioner, Social Security | : |
| Administration | : |

...o0o...

**MEMORANDUM**

Now pending before the court is defendant's motion to dismiss and for summary judgment. Plaintiff Byron J. Lee has sued Michael J. Astrue, Commissioner of the Social Security Administration ("SSA"), for violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, alleging retaliation and discrimination based on race and sex. The issues in this case have been fully briefed and no hearing is necessary.  For the reasons stated below, the defendant's motion will be granted.

**BACKGROUND**

Mr. Lee began working for the SSA in August 2000 as a Management Analyst at a GS-9 level. In December 2002, he was promoted to a GS-11 level and named a Suggestion Awards Specialist. In response to being rejected for a GS-12 position in March 2005, Mr. Lee filed an Equal Employment Opportunity ("EEO") complaint with the SSA's Office of Civil Rights and Equal Opportunity ("OCREO"). After Mr. Lee's supervisor selected him for a different GS-12 position in July 2005, Mr. Lee withdrew his EEO complaint. In December 2006, Mr. Lee filed a second EEO

complaint with the OCREO against his supervisor for non-selection after he was rejected from a GS-13 position for which he had applied.

In January 2007, one of Mr. Lee's supervisors, Gaylord Brown, began giving Mr. Lee negative feedback on his assignments. Mr. Brown substantially revised one of Mr. Lee's written projects in January and harshly critiqued two additional writing assignments in a February 5, 2007 email. On February 9, 2007, Mr. Lee filed a third EEO complaint with the OCREO, alleging that he was subjected to a hostile work environment and discriminated against on the basis of race, gender, and age, as well as retaliated against for filing his December 2006 EEO complaint.[1] (*See* Def.'s Mem. Ex. 1.)

On February 27, 2007, Mr. Lee's supervisors met with him to discuss their concerns about his performance, including problems with plagiarism and inaccuracies in written work, tardiness in completing assignments, and rudeness.  As complaints about Mr. Lee's work continued, Mr. Brown placed Mr. Lee on a Performance Assistance Plan ("PAP") on April 2, 2007, which SSA policy requires when an employee fails to satisfy performance standards. Pursuant to the plan, the SSA assigned Mr. Lee a mentor, provided written feedback, and arranged for Mr. Lee to take online courses to improve his job skills. On April 16, Mr. Brown met with Mr. Lee to discuss the lack of improvement in his overall work performance and his failure to meet deadlines. On May 21, Mr. Brown provided Mr. Lee with a summary of ongoing performance issues, including his continued failure to meet deadlines and poor analytical reasoning.

When an employee continues to perform poorly, even under a PAP, SSA policy calls for instituting an Opportunity to Perform Successfully Plan ("OPS Plan"). Under an OPS Plan, an employee is given 120 days to improve his performance. If the employee's performance does not

---

[1] Although the OCREO has investigated Mr. Lee's claims, the administrative judge has yet to issue a decision.

improve, the SSA must reassign him to another position or terminate his employment. The SSA

placed Mr. Lee on an OPS Plan on June 8, 2007 and instructed him on aspects of his performance

that needed to be improved.  Mr. Brown gave Mr. Lee increasingly critical written feedback

throughout the 120-day period, explaining to Mr. Lee what was expected of him and how his

performance fell short of these expectations. (*See* Def.'s Mem. Exs. 19-23.)

On September 6, 2007, the SSA issued its final decision denying Mr. Lee a within-grade

salary increase. (*See* Def.'s Mem. Ex. 2.) Mr. Lee appealed this decision to the Merit Systems

Protection Board ("MSPB") on September 7, 2007, claiming he was denied a pay increase because

of retaliation and discrimination based on race, color, sex, and age. Following another poor

evaluation in September, Mr. Brown recommended on October 30, 2007 that Mr. Lee's

employment with the SSA be terminated. The SSA officially discharged Mr. Lee on January 14,

2008 and Mr. Lee appealed this decision to the MSPB on January 21, 2008. Mr. Lee alleged in his

MSPB appeal that his termination was a product of retaliation and discrimination based on race,

age, and sex.

The MSPB joined Mr. Lee's September 7 and January 21 claims into one appeal and held a

hearing, during which Mr. Lee withdrew his race, color, age, and sex discrimination claims. The

administrative law judge denied the appeal and the MSPB rejected Mr. Lee's Petition for Review.

Mr. Lee then appealed to the Equal Employment Opportunity Commission, which affirmed the

MSPB's final order. Mr. Lee filed this civil action on April 20, 2009. The SSA now moves (1) to

dismiss Mr. Lee's retaliation claims dealing with his non-selection for a GS-13 position in

December 2006 and the denial of a within-grade pay increase in September 2007, as well as his

claims of race and sex discrimination, for lack of subject matter jurisdiction under Federal Rule of

Civil Procedure 12(b)(1), and (2) for summary judgment on Mr. Lee's remaining retaliation claims.

## ANALYSIS

I. *Motion to Dismiss under Fed. R. Civ. P. 12(b)(1)*

A motion pursuant to Federal Rule of Civil Procedure 12(b)(1) should be granted only if the "material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (internal quotation marks and citation omitted). The plaintiff bears the burden of proving that subject matter jurisdiction exists. *Piney Run Pres. Ass'n v. County Commissioners of Carroll County*, 523 F.3d 453, 459 (4th Cir. 2008). When considering a Rule 12(b)(1) motion, the court should "regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Evans*, 166 F.3d at 647 (internal quotation marks and citation omitted).

The SSA first argues that the court lacks subject matter jurisdiction over Mr. Lee's race and sex discrimination claims because he has failed to exhaust his administrative remedies. Once a government employee appeals an agency decision to the MSPB, he must raise any Title VII claims he has with the MSPB or he will be barred from pursuing them in federal court. *See Khoury v. Meserve*, 268 F. Supp. 2d 600, 610-11 (D. Md. 2003), *aff'd*, 85 Fed. Appx. 960 (4th Cir. 2004). Mr. Lee concedes that he withdrew his race and sex discrimination claims during his MSPB hearing. (*See* Pl.'s Opp. at 14.) Accordingly, these claims will be dismissed for failure to exhaust administrative remedies.

The SSA also contends that Mr. Lee's retaliation claims relating to his non-selection in December 2006 and the denial of a within-grade pay increase in September 2007 should be dismissed for lack of subject matter jurisdiction. First, the SSA asserts that Mr. Lee failed to exhaust

4

his administrative remedies with respect to his non-selection claim because, although he raised the

claim in the complaint filed with the OCREO, the OCREO has not taken any final agency action.

Yet Title VII grants federal employees the right to bring a civil action after 180 days from the date

the complaint was filed if the agency has not taken final action during that time and the employee

has not filed an appeal. 42 U.S.C. § 2000e-16(c); *see also* 29 C.F.R. § 1614.407(b). As Mr. Lee

filed his complaint with the OCREO in December 2006 and more than 180 days have passed with

no final agency action taken, this court has subject matter jurisdiction over Mr. Lee's non-selection

claim.

The SSA further challenges the court's jurisdiction over Mr. Lee's claim regarding the

denial of his within-grade pay increase, which the SSA believes he failed to allege in his complaint.

Mr. Lee's complaint mentions the within-grade pay increase, however, in the section describing the

facts of his claim. (*See* Pl.'s Compl. ¶ 6.) Mr. Lee initially represented himself when he filed his

complaint and, therefore, the court must construe the complaint liberally. *See Erickson v. Pardus*,

551 U.S. 89, 94 (2007) (noting that "a *pro se* complaint, however inartfully pleaded, must be held to

less stringent standards than formal pleadings drafted by lawyers") (internal quotation marks

omitted). As Mr. Lee has exhausted his administrative remedies with the MSPB with respect to his

salary increase claim and given the SSA notice of the claim by referencing it in his complaint, the

within-grade pay increase claim will not be dismissed for lack of subject matter jurisdiction.

II.   *Motion for Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should

be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show

that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(c).  The Supreme Court has clarified that this does not mean any factual dispute will defeat the motion.  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

 "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).  The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial."  *Bouchat*, 346 F.3d at 526 (internal quotations omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

 The SSA argues that summary judgment should be granted in its favor with respect to Mr. Lee's remaining retaliation claims. To state a *prima facie* case of retaliation under Title VII, Mr. Lee must demonstrate that: (1) he engaged in a protected activity; (2) the SSA acted adversely against him; and (3) the protected activity and the adverse action were causally connected.  *See Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007). Under the *McDonnell Douglas* burden-shifting framework, once Mr. Lee establishes a *prima facie* case, the burden shifts

to the employer to provide a legitimate nondiscriminatory reason for the adverse actions. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973); *see also Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 650 (4th Cir. 2002) (noting that retaliation claims are evaluated under the *McDonnell Douglas* framework). If the employer is able to provide a legitimate reason for its adverse treatment, the burden shifts back to the plaintiff to show that the reason is "mere pretext for retaliation by proving both that the reason was false, and that discrimination was the real reason for the challenged conduct." *Holland*, 487 F.3d at 218 (internal quotation marks omitted).

There is no dispute that Mr. Lee's EEO and MSPB complaints constitute protected activity or that the SSA's decisions to deny him a promotion and pay increase and to terminate his employment are adverse actions. The SSA maintains, however, that Mr. Lee has failed to prove a causal link between the protected activities and adverse actions or to offer evidence that the SSA's proffered legitimate reason for these adverse actions is pretextual.

With respect to Mr. Lee's claim that he was denied a promotion in December 2006 because of retaliation, he has not alleged that this denial was caused by any specific protected activity. Given that the only protected activity occurring prior to December 2006 was Mr. Lee's first EEO complaint in March 2005, I will assume Mr. Lee believes he was denied a promotion because of this complaint. Nevertheless, the fact that Mr. Lee was denied a promotion after he filed his first EEO complaint is not enough to make a *prima facie* showing of causation. To be treated as indirect proof of causation, the temporal proximity between the protected activity and the adverse employment action must be close. *See Clark County School Dist. v. Breeden,* 532 U.S. 268, 273 (2001). "A lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action ... negates any inference that a causal connection exists between the two." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998).

7

Given that the time lapse in this case is approximately 21 months, this court cannot infer a causal connection based on temporal proximity. As Mr. Lee has not presented any other evidence of causation, his claim that he was denied a promotion in December 2006 because of retaliation must fail.

Assuming without deciding that Mr. Lee has established a *prima facie* case of retaliation with respect to the SSA's decisions to deny him a within-grade salary increase and to terminate his employment, the SSA has met its burden of providing a legitimate non-retaliatory reason for taking these actions: Mr. Lee's poor work performance. Problems with Mr. Lee's performance were well-documented throughout 2007; his supervisors provided him regular feedback pursuant to performance improvement plans. (*See* Def.'s Mem. Exs. 12-24.) Indeed Mr. Brown's October 30, 2007 letter to Mr. Lee, in which he proposed removing Mr. Lee from his position, clearly stated that Mr. Lee's "unacceptable performance" was the reason for the proposal and cited specific examples of poor work product. (Def.'s Mem. Ex. 24.)

Given that the SSA has met its burden of providing a legitimate reason for its actions, Mr. Lee must demonstrate that this reason is mere pretext for unlawful retaliation. Mr. Lee has failed to provide evidence, however, showing that the SSA's proffered reason is false or that its actual motive was retaliatory. Instead, Mr. Lee argues that (1) Mr. Brown relied on assignments other than the five specifically mentioned in his October 30, 2007 letter proposing removal, and (2) the SSA's performance standards were overly vague.[2] As for Mr. Lee's first argument, the fact that there was additional unsatisfactory work on which Mr. Brown based his termination proposal does not demonstrate that the SSA acted adversely against Mr. Lee because of any factor other than his poor

---

[2] The SSA evaluated Mr. Lee under four performance elements: (1) interpersonal skills, (2) participation, (3) demonstrates job knowledge, and (4) achieves business results. (*See* Def.'s Mem. Ex. 24 at 1-2.) Each element has accompanying standards that further define the SSA's expectations for employees. (*See id.*)

work performance. Mr. Brown provided Mr. Lee with five specific examples of problematic work product; he was under no obligation to describe every instance of underperformance. Furthermore, Mr. Lee does not claim that these additional assignments were of better quality than the ones described in Mr. Brown's October 30 letter.

Mr. Lee's assertion that he was assessed under vague performance standards, in addition to his belief that his assignments were all eventually completed successfully, is similarly unpersuasive in proving that his denial of a salary increase and termination were motivated by retaliation. The Fourth Circuit has noted, "[i]t is the perception of the decision maker which is relevant," when considering whether the employer's legitimate nondiscriminatory reason for acting adversely against the plaintiff is credible. *Holland*, 487 F.3d at 217 (internal quotations omitted). Thus Mr. Lee's claim that he successfully completed all of his assignments has no bearing on whether his supervisors genuinely believed otherwise.[3] Although Mr. Lee provided a report by Arnold J. Gerber, a human resources specialist, opining that the performance standards were vague and subjectively applied, this does not indicate that they were applied pretextually in Mr. Lee's case. (*See* Pl.'s Opp. Ex. 14.) If Mr. Lee's supervisors subjectively believed his performance to be poor, as the record demonstrates they did, and this belief motivated them to act adversely towards Mr. Lee, then Title VII was not violated. Accordingly, as Mr. Lee has failed to present evidence demonstrating that the SSA's proffered legitimate reason for denying Mr. Lee a pay increase and terminating his employment is pretextual, his retaliation claims will be denied.

---

[3] Mr. Lee claims in his opposition brief that "Brown repeatedly testified under oath that Lee had successfully completed the Bodily Spills, SSA Family (Newsletter) and Childcare Grants projects on time." (Pl.'s Opp. 24.) Yet Mr. Lee has not cited any portion of the record containing such testimony and I have been unable to find this testimony in any attached exhibit.  As all of the other evidence in the record indicates that Mr. Brown found Mr. Lee's performance unsatisfactory, there is no basis for presuming anything to the contrary.

## **CONCLUSION**

For the foregoing reasons, the defendant's motion to dismiss and for summary judgment will be granted. A separate Order follows.

March 18, 2010
Date

_____/s/_____
Catherine C. Blake
United States District Judge